UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07-CV-36-H

MARY RICE, Executrix of the                                                        PLAINTIFF
Estate of Larry Rice, deceased

V.

LARRY D. CHANDLER, et al.                                                         DEFENDANTS

**MEMORANDUM OPINION**

Mary Rice, executrix of the estate of decedent Larry Rice,[1] has brought this action against Defendants Larry Chandler, Roy Washington, Janet Fisher, Larry Cromeans, and Rachael Davis. In Count I of her complaint, Plaintiff makes a claim under 42 U.S.C. § 1983, alleging that Defendants violated the decedent's Eighth, Tenth, and Fourteenth Amendment rights during his incarceration at the Kentucky State Reformatory ("KSR"). In Counts II and III of her complaint, Plaintiff brings state law tort claims against Defendants arising from the same conduct. Currently pending before the Court are a number of motions addressing various aspects of the case, several of which attempt to dispose of one or more of Plaintiff's claims.

I.

At all times relevant to the events giving rise to Plaintiff's complaint, Plaintiff's decedent Larry Rice ("Rice") was an inmate at KSR, located in LaGrange, Kentucky. During that time,

---

[1] Mary Rice first moved the Court to substitute her as the proper party on November 13, 2007, following the September 10, 2007 death of Larry Rice. Pursuant to Fed. R. Civ. P. 25 the Court will grant the motion and throughout this opinion will refer to her as Plaintiff.

Defendant Larry Chandler was the warden of KSR, and Defendants Washington, Fisher, Cromeans, and Davis were nurses who provided healthcare to inmates at KSR. Though Washington, Fisher, Cromeans, and Davis worked at KSR, they were employed by CorrectCare–Integrated Health, Inc. ("CorrectCare"), a company specializing in providing healthcare services to correctional institutions.

On or about March 17, 2006, Rice underwent a computed tomography ("CT") scan, which revealed a mass in his right lung. This scan and its results were allegedly acknowledged by Defendant Washington, an advanced registered nurse practitioner who was Rice's "attending doctor" at KSR. Complaint at ¶ 5. On or about June 15, 2006, Rice underwent a needle biopsy of his lung. The next day (June 16), Washington was informed by the University of Louisville that the preliminary results of the needle biopsy indicated that Rice might have carcinoma in his right lung and that lesions existed in his left lung. These preliminary results were not communicated to Rice. It was not until August 21, 2006, that Rice was informed of the official result of the needle biopsy: malignant non-small cell carcinoma. He began chemotherapy on or about October 26, 2006, and died September 10, 2007.

Defendant Davis, who is a licensed practical nurse ("LPN"), worked in the "treatment room" at KSR. She avers that she is unable to prescribe medication, and that should she believe the limited range of treatment options she is able to provide will be inadequate, she can only refer the inmate-patient to his "provider" for further treatment. On May 9, July 11, July 20, and July 28, 2006, Rice presented himself to Davis complaining of lung and/or chest pain, which on at least one occasion was accompanied by wheezing and/or labored breathing. His vital signs were reportedly normal on each of these occasions, and Davis did not observe any "objective

signs" that Rice was in distress. On May 9 and July 11, Davis referred Rice to his primary care provider for further treatment, and in response to Rice's July 28 complaint that he was not receiving his prescription pain medication, she called the pill dispensary and faxed a copy of Rice's prescription there to remedy the problem. Following Rice's July 20 request to be moved to a segregation unit, Davis notified the unit supervisor accordingly.

Defendant Cromeans, who is a registered nurse ("RN"), worked as a night shift nurse at KSR. Like Davis, he is unable to prescribe narcotic pain medication, and should he believe that the limited range of treatment options he is able to provide will be inadequate, he can only refer the inmate-patient to his "provider" for further treatment. On May 11, August 10, and October 5, 2006, Rice presented himself to Cromeans complaining of chest and/or back pain, noting on at least one occasion that the pain occurred every night. His vital signs were reportedly normal on each of these occasions, and Cromeans did not observe any objective signs of distress. On May 11, Cromeans referred Rice to his primary care provider for further treatment, and on both August 10 and October 5, Cromeans offered Rice Tylenol and/or Motrin, which Rice accepted only on the former date.

Defendant Fisher, who is an RN and also worked at KSR, is similarly unable to prescribe narcotic pain medication, and should she believe that the limited range of treatment options she is able to provide will be inadequate, she can only refer the inmate-patient to his "provider" for further treatment. On April 7 and August 9, 2006, Rice presented himself to Fisher complaining of chest pain, which on at least the latter occasion was accompanied by wheezing and high blood pressure. On both April 7 and August 9, Fisher discussed with Rice the procedure for getting pain medication during the night (something Fisher could not provide), and on the latter, she

provided Rice with ibuprofen.

Rice filed his three-count complaint on January 24, 2007. In it he asserted a claim under 42 U.S.C. § 1983 that Defendants' conduct violated the Eighth, Tenth, and Fourteenth Amendments, as well as a medical malpractice claim and an intentional infliction of emotional distress claim. Discovery is ongoing, and a jury trial is set to begin on January 12, 2009. Both sides have filed a number of motions that are currently pending before the Court, several of which are largely procedural, require little or no discussion, and will simply be addressed in the accompanying order. The issues requiring greater analysis fall into two categories: motions for summary judgment and a motion to amend the complaint. Each will be discussed in turn.

II.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* If the nonmoving party will bear the burden at trial on a dispositive

issue, the nonmoving party must go beyond the pleadings and by his own affidavits, "or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted, citing Fed. R. Civ. P. 56(e)). If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

At the outset the Court must discuss a fundamental aspect of Count I of Plaintiff's complaint, which alleges violations of the Eighth, Tenth, and Fourteenth Amendments. While Count I seems clearly directed toward an Eighth Amendment claim, the Tenth Amendment provides no theory under which Plaintiff can recover for the injuries he asserts. Additionally, Plaintiff's Fourteenth Amendment allegation must be analyzed with reference to the principle that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

Here, the Eighth Amendment "provides an explicit textual source of constitutional protection" against the sort of behavior of which Plaintiff complains, and as such the Court considers it, rather than the Fourteenth Amendment, to be the appropriate "guide for analyzing these claims." Therefore the Court's determinations as to Plaintiff's Eighth Amendment claim will be dispositive as to the entirety of Plaintiff's § 1983 claim.

III.

Defendant Chandler has moved for summary judgment on Plaintiff's claims against him, asserting that the Eleventh Amendment bars Plaintiff's suit in its entirety, that in the alternative Chandler is entitled to qualified immunity from Plaintiff's § 1983 claim, and that, again in the alternative, Plaintiff has failed to allege facts sufficiently specific to allow his § 1983 claim to proceed.[2] Chandler also moves for summary judgment on the state law claims. The Court will address each contention in turn.

A.

Chandler's Eleventh Amendment argument may be easily dispensed with. "The Eleventh Amendment bars [§ 1983] suits [against a State] unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." *Will v. Mich. Dep't of State Police*, 491, U.S. 58, 66 (1989) (internal citations omitted). A "suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," and is therefore "is no different from a suit against the State itself." *Id.* at 71 (internal citations omitted).

In contrast to such "official capacity" suits, so-called "personal capacity" suits "seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "Officers sued in their personal capacity come to court as individuals," *Hafer v. Melo*, 502 U.S. 21, 27 (1991), rather than as the State, and therefore are unable to avail themselves of Eleventh Amendment immunity. *Scheuer v.*

---

[2]Chandler's motion also requests that all discovery against him be stayed pending resolution of the immunity issue. Given the Court's disposition of Plaintiff's § 1983 claim against Chandler, discussed below, this aspect of the motion will be deemed moot.

6

*Rhodes*, 416 U.S. 232, 237 (1974).

As is evident in Plaintiff's complaint and subsequent pleadings, Chandler is being sued in his individual capacity. *See, e.g.*, Complaint at ¶ 8; Plaintiff's Response to Defendant Larry Chandler's Motion for Summary Judgment at 3–4. Therefore he cannot claim Eleventh Amendment immunity from this action.

B.

However, "officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law." *Hafer,* 502 U.S. at 26 (citing *Graham*, 473 U.S. at 166–67). Chandler asserts that he is immune from Plaintiff's Eighth Amendment claim based on the doctrine of qualified immunity, which holds that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When evaluating an assertion of qualified immunity, a court must first decide whether, "taken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). And "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.*

A cognizable claim of an Eighth Amendment violation based on failure to provide medical care is stated where an inmate alleges "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106

(1976). Moreover, a prison official will only be liable for such a violation "if he *knows* that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994) (emphasis added); *see also Horn ex rel. Parks v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) ("Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference"). However, a prison official who "refused to verify underlying facts he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist" would not avoid liability. *Farmer,* 511 U.S. at 843 n.8.

Rice's lung cancer certainly constitutes a serious medical need. However, Rice apparently never filed a medical grievance while incarcerated at KSR, and Chandler avers that he was not informed of Rice's complaints until after an October 9, 2006 inquiry from United States Senator Jim Bunning. Defendant Larry Chandler's Reply in Support of Motion for Summary Judgment at 2–4; Defendant Larry Chandler's Motion for Summary Judgment, Exhibit 1. Chandler was not personally involved in the actual medical treatment Rice received, and avers that he does not provide training to KSR medical personnel or review their medical decisions, and that he does not have the authority to establish medical practices at KSR. Defendant Larry Chandler's Motion for Summary Judgment, Exhibit 1.

Here there is simply no indication that Chandler knew or should have known of the specifics of the medical care Rice received. As such, Chandler could not have been deliberately indifferent to that care, and therefore he committed no Eighth Amendment violation. *See Farmer*, 511 U.S. at 844 ("prison officials who lacked knowledge of a risk cannot be said to

have inflicted punishment"). Though Plaintiff asserts that it "remains to be seen" whether Chandler was ever notified of Rice's complaints, Plaintiff has provided nothing beyond the naked assertion that Chandler was deliberately indifferent to Rice's medical needs, which is insufficient to support this claim. *See, e.g., Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986) (dismissing a § 1983 claim where "[t]he plaintiffs offered nothing in response to the motions of the defendants from which the court could determine" that any constitutional violation had occurred). As such, the Court finds that "there is no necessity for further inquiries concerning qualified immunity," *Saucier*, 533 U.S. at 201, and holds that Chandler is immune from Plaintiff's § 1983 claim.

## C.

For similar reasons, Chandler is also entitled to summary judgment on the merits of Plaintiff's § 1983 claim against him. As noted above, where "no factual support" is provided for a § 1983 claim, summary judgment is appropriate. *Chapman*, 808 F.2d at 465; *see also Doe v. Sullivan County*, 956 F.2d 545, 550 (6th Cir. 1992) (granting summary judgment on a § 1983 claim where a plaintiff "failed to produce any evidence showing a causal relationship between his injuries" and the conditions for which the defendant was allegedly responsible); *Horn*, 22 F.3d at 659 ("a violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury").

As discussed above, Plaintiff has set forth no evidence indicating Chandler's knowledge, actual or constructive, of Rice's complaints regarding his medical care prior to Senator Bunning's October 2006 inquiry. Such knowledge would be a necessary prerequisite to a finding of deliberate indifference, *Farmer,* 511 U.S. at 844; *Horn*, 22 F.3d at 660, and its

9

absence means Plaintiff's § 1983 claim against Chandler cannot proceed.[3]

The same evidence that precludes the § 1983 claims applies to the state claims as well. Chandler did not directly supervise any of the other Defendants. He was not part of the decision-making process concerning Plaintiff's treatment. He neither took action or declined to take action regarding Plaintiff's case. The Court also concludes, therefore, that the negligence and intentional infliction of emotional distress claims cannot go forward.

IV.

Defendants Cromeans, Davis, and Fisher ("Defendant nurses") have each moved for summary judgment on Plaintiff's § 1983 claim against them, asserting that the evidence does not support such a claim. As discussed above, an Eighth Amendment violation based on failure to provide medical care is stated where an inmate alleges "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. While such deliberate indifference "entails something more than mere negligence," it also may be "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. Thus a violation occurs where a prison official "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837.

Some of Plaintiff's claims regarding Defendant nurses' actions seemingly ignore the limitations on what LPNs and RNs are legally permitted to do, and "the question whether . . . additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment . . . . [and] does not represent cruel and unusual punishment."

---

[3]Allowing Plaintiff's § 1983 claim against Chandler to proceed solely on a theory of *respondeat superior* would be inappropriate. *Monell v. Dep't of Soc. Servs.. of New York*, 436 U.S. 658, 691–92 (1978); *Hays v. Jefferson County*, 668 F.2d 869, 872 (6th Cir. 1982).

*Estelle*, 429 U.S. at 107. However, Defendant nurses, by virtue of the fact that they personally treated Rice, are in a substantially different position from that of Defendant Chandler, who all evidence indicates "did not know of the underlying facts indicating a sufficiently substantial danger and . . . therefore [was] unaware of a danger." *Farmer,* 511 U.S. at 844.

It simply cannot be said that "no genuine issue as to any material fact" on the question of whether the deficiencies in the treatment Defendant nurses provided to Rice were merely "matters for medical judgment" exists, especially in light of the report of Plaintiff's expert, Jacqueline Moore. Plaintiff's Response to Defendant Fisher's Motion for Partial Summary Judgment, Exhibit 11. It is not enough for Defendants to say that the delay in treatment was merely a disagreement about treatment. The evidence, as yet, does not reflect whether this delay was the result of a disagreement, some negligence, a bureaucratic mistake or worse. Therefore summary judgment on Plaintiff's § 1983 claim against Defendant nurses would be inappropriate at this time.

V.

Plaintiff has moved to amend the complaint, seeking to add CorrectCare as a party to the claims brought against Defendants, and to include an additional negligence claim against CorrectCare.[4] In addition to objecting to the addition of CorrectCare as a party, Defendants have moved to hold all discovery deadlines in abeyance pending resolution of Plaintiff's motion to amend.

A court should "freely" allow amendments to pleadings "when justice so requires." Fed.

---

[4] In Plaintiff's motion to amend, Plaintiff also seeks to add Mary Rice as a party to the complaint and to dismiss Tiffany Anker as a defendant. In its Agreed Order of December 3, 2007, the Court dismissed Anker, and as was noted above, the Court will substitute Mary Rice as the proper Plaintiff in its accompanying order.

R. Civ. P. 15(a)(2). However, where such amendments would be futile, a court need not allow them. *Forman v. Davis*, 371 U.S. 178, 182 (1962). Here Defendants assert that any amendment naming CorrectCare in Count I of the Plaintiff's complaint would be futile given that a § 1983 claim alleged against CorrectCare over a year after the claim accrued would be time-barred. *See Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). Plaintiff does not dispute the impact the statute of limitations would have on a newly-added party, but argues that the proposed amendment should relate back to the date of the original complaint, which would make the allegations against CorrectCare timely.

The amendment would relate back to the date of the original complaint if within 120 days of when Rice filed his complaint, CorrectCare received "notice of the action that it will not be prejudiced in defending on the merits," and "knew or should have known that the action would have been brought against it, *but for a mistake concerning* [CorrectCare's] *identity*." Fed. R. Civ. P. 15(c)(1)(C) (emphasis added). CorrectCare almost certainly had notice of the *existence* of Plaintiff's action within the requisite period, given that Defendant nurses were CorrectCare employees and are reportedly covered by CorrectCare's insurance policy. However, this is not the end of the inquiry, for Plaintiff also must show that at a minimum, CorrectCare "knew or should have known" that Plaintiff would have sued it, but for a mistake concerning its identity.

Plaintiff's complaint evinces no intent to sue Defendant nurses' employer, and as such it cannot be said that Plaintiff made a mistake as to the identity of that employer. If anything, Plaintiff's complaint indicates an awareness of the fact that Defendant nurses were employed by

12

an entity other than KSR,[5] and a decision *not* to name that entity as a defendant.  Furthermore, even if Plaintiff's naming of "John and Jane Does Nos. 1, 2 and 3" could be interpreted as indicating an intent to sue CorrectCare (despite Plaintiff's characterization of these John and Jane Does, which clearly indicates otherwise), substituting CorrectCare for these parties would still be "considered a change in parties, not a mere substitution of parties," and would not relate back.  *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996).  Equally unavailing is Plaintiff's argument that the complaint's descriptions of Defendants Chandler and Washington should be interpreted as an attempt to name CorrectCare, given the unambiguous pertinence of those descriptions to Chandler and Washington alone.

Thus, since it cannot be said that Plaintiff intended to name CorrectCare as a defendant when the complaint was filed but merely made a mistake as to CorrectCare's identity, the belated addition of CorrectCare can only be characterized as the addition of a new party.  "Sixth Circuit precedent clearly holds that new parties may not be added after the statute of limitations has run, and that such amendments do not satisfy the 'mistaken identity' requirement" of Rule 15.  *Id.* at 240.  Therefore the Court finds that this proposed amendment fails to satisfy Rule 15 and will not be permitted.

## VI.

Finally, Defendants Fisher, Davis and Cromeans assert that Count III of Plaintiff's complaint, which alleges intentional infliction of emotional distress, is improper given that "[w]here an actor's conduct amounts to the commission of one of the traditional torts such as

---

[5]Unlike "John and Jane Does Nos. 1, 2 and 3," whom Plaintiff named in the complaint, Defendant nurses were not described as "employees of . . . KSR." Complaint at ¶¶ 6–7.  Furthermore, the complaint distinguishes between "employees of" and "health care professionals at" KSR, indicating an awareness that these "health care professionals" were something other than "employees" of KSR.  *Id.* at ¶¶ 4–5, 7.

13

assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie." *Banks v. Fritsch*, 39 S.W.3d 474, 481 (Ky. Ct. App. 2001). Plaintiff asserts that it is as yet unclear whether pleading the "gap-filler" tort of intentional infliction of emotional distress will be necessary or appropriate, given the incomplete state of discovery.

Though Count III alleges no actions "intended only to cause extreme emotional distress," but instead merely alleges the actions which Plaintiff believes also constitute negligence and Constitutional violations, the Court is doubtful that there will be a "gap" for the tort of outrage to fill. However, the issue is at best incompletely briefed given that it was first raised in Defendants' response to Plaintiff's motion to amend the complaint, and as such the Court believes it best to provide the parties with a fuller opportunity to explicate their positions on this issue before a decision is issued.

The Court will enter an order consistent with this Memorandum Opinion.

cc:    Counsel of Record